IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JESSICA L. SEAICH,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | CV 16–127–M–JCL<br><br>ORDER |

Plaintiff Jessica L. Seaich brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security's decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Seaich's application was denied initially and on reconsideration, and Seaich requested an administrative hearing. On April 23, 2015, an ALJ issued a decision finding Seaich not disabled within the meaning of the Act. (Doc. 8-2, at 13). The Appeals Council denied Seaich's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. (Doc. 8-2, at 2). Jurisdiction vests with this Court pursuant to 42

U.S.C. § 405(g).

In her application, Seaich alleges disability since April 4, 2008. (Doc. 8-5, at 2). But Seaich alleged the same disability onset date in a prior application for benefits, which was denied at the administrative level. Seaich sought judicial review, and pursued her appeal to the Ninth Circuit. On March 17, 2017, the Ninth Circuit remanded the matter for further administrative proceedings. (Doc. 20-1).

When the ALJ issued his April 23, 2015, decision on Seaich's current application for benefits, her civil action for judicial review of her prior application was still pending. Because the civil action on her prior claim was still pending, the ALJ made clear that he did not have jurisdiction to reopen or revise the decision on that application. The ALJ thus limited his consideration to the period following the period covered by the prior decision that was undergoing judicial review. The ALJ thus addressed Seaich's alleged disability as of June 13, 2012 – the day following the date of the prior ALJ decision. June 13, 2012, marks the beginning of the relevant period for purposes of Seaich's current application.

I. **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where

the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. <u>**Burden of Proof**</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected

to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. §

404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

The ALJ found at step one that Seaich last met the insured status requirements of the Act on September 30, 2014, and had not engaged in substantial gainful activity during the period from June 13, 2012, through her date last insured. (Doc. 8-2, at 15). At step two, the ALJ found that Seaich had the following severe impairments: diabetes (type 1) with peripheral neuropathy; seronegative rheumatoid arthritis (versus inflammatory polyarthropathy, not otherwise specified, versus diabetic cheiroarthropathy); suspected inflammatory bowel disease (Crohn's disease); obesity; bilateral shoulder adhesive capsulitis; fibromyalgia and; migraine headaches with dizziness. (Doc. 8-2, at 16). The ALJ concluded at step three that Seaich did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (Doc. 8-2, at 17). The ALJ also found that while Seaich's impairments could reasonably be expected to cause the alleged symptoms, her subjective testimony was not entirely credible. (Doc. 8-2, at 19). The ALJ concluded that Seaich had the residual functional capacity to perform a

reduced range of light work with various postural and environmental restrictions. (Doc. 8-2, at 18). Based on that residual functional capacity assessment, the ALJ found at step four that Seaich could perform past relevant work as a receptionist. (Doc. 8-2, at 28). The ALJ made alternative findings at step five, concluding that Seaich was also capable of performing sedentary work as a check cashier, information aide, and generally shipping clerk. (Doc. 8-2, at 30).

A. **Medical Opinions**

Seaich argues the ALJ did not provide sufficient reasons for rejecting the opinion her treating rheumatologist, Dr. Melody Nelson.[1] A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2).

---

[1] It appears from the medical records that Dr. Nelson's last name used to be Knauf. The Court will refer to this physician as Dr. Nelson.

The ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

Seaich established care with Dr. Nelson in October 2008, and returned for follow up visits once every three to four months. (Doc. 8-9, at 123). In August 2012, Dr. Nelson completed a Residual Functional Capacity Questionnaire on which she indicated that Seaich could stand and/or walk four hours in an eight-hour work day, and lift and/or carry ten pounds occasionally and less then ten pounds frequently. (Doc. 8-9, at 124-30). Dr. Nelson also identified several postural and manipulative limitations. For example, she found that Seaich had extreme loss of function in both upper extremities such that her ability to perform fine and gross movements seriously interfered with her ability to function (Doc. 8-9, at 127).

Dr. Nelson's opinion that Seaich's impairments caused her disabling limitations was contradicted by the opinions of treating physician Dr. William Nagel (doc 8-7, at 133) and the state agency physician (doc 8-3, at 31), which means the ALJ could reject it for specific and legitimate reasons. For the most part, the ALJ actually accepted Dr. Nelson's opinion. The ALJ recognized that Dr. Nelson was a long-time treatment provider, and agreed that the limitations she described were "generally consistent with and supported by the objective medical evidence." (Doc. 8-2, at 21). Many of the limitations set forth in Dr. Nelson's opinion were consistent with the ALJ's residual functional capacity assessment, which restricted Seaich to lifting ten pounds occasionally and less than ten pounds frequently. The ALJ also found that Seaich could seldom reach overhead, and even then lift only one to two pounds. (Doc. 8-2, at 18). The ALJ imposed even more restrictive standing and walking limitations than those set forth by Dr. Nelson, finding that Seaich could walk for only ten minutes a time and stand for 30 minutes at a time for up to two hours in an eight-hour work day. (Doc. 8-2, at 18).

While the ALJ thus accepted portions of Dr. Nelson's opinion, he rejected many of the postural and manipulative limitations she identified because more recent medical records showed that she had greater functioning with appropriate

treatment. (Doc. 8-2, at 21). The ALJ then discussed those records in detail, noting for example that when Seaich returned to Dr. Nelson in November 2012 and March 2013, she reported that she was "doing pretty good" and was walking and swimming for exercise. (Doc. 8-7, at 176). Other medical records cited by the ALJ shows that physical examination findings were often benign, Seaich had no extremity edema, normal range of motion and muscle strength, no acute joint inflammation or deformity, no sensory deficits, and a normal gait. (Doc. 8-7, 119-188; 8-9). The ALJ permissibly rejected Dr. Nelson's opinion as to the severity of Seaich's postural and manipulative limitations because it was not supported by more recent medical records.

In February 2015, Dr. Nelson wrote a letter in support of Seaich's application for disability benefits. (Doc. 8-10, at 159). Dr. Nelson explained that Seaich had a history of type I diabetes, Crohn's disease, and Crohn's associated arthropathy. She wrote that Seaich's symptoms were "quite limiting from a functional standpoint," and she would not be able to maintain gainful full time employment due to fatigue and joint pain. (Doc. 8-10, at 159). The ALJ discussed this letter but rejected it in part because was written several months after Seaich's insured status expired. (Doc. 8-2, at 27). The ALJ further noted that many of the specific limitations Dr. Nelson identified were accommodated by the residual

functional capacity assessment, and found that the manipulative limitations she described were not supported by any objective examination findings. (Doc. 802, at 27). Seaich does not challenge the ALJ's evaluation of this letter, and has thus waived any argument that the ALJ did not provide specific and legitimate reasons for discounting it. See *Avenetti v. Barnhart*, 456 F.3d 1122, 1124-25 (9th Cir. 2006).

    Seaich next takes issue with the fact that the ALJ gave the opinion of treating physician Dr. William Nagel more weight than Dr. Nelson's opinions. Dr. Nagel was one of Seaich's treating physicians at the Partnership Health Center. (Doc. 8-7, at 127-53). In July 2012, Seaich saw Dr. Nagel for the purposes of getting a letter in support of her disability application. (Doc. 8-7, at 133). After their visit, Dr. Nagel wrote in his notes that although Seaich has multiple problems, he suspected those evaluating her application for disability benefits "are seeing a collection of conditions which are either not disabling at all or fairly mild in nature." (Doc. 8-7, at 133). Dr. Nagel found there was "just nothing overwhelming in her presentation that would indicate to me that disability is likely to be determined; no indeed is it likely to be a good thing if it is." (Doc. 8-7, at 133).

Seaich argues the ALJ had a duty to develop the record and should have contacted Dr. Nagel for more information. But "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Dr. Nagel's opinion was not ambiguous, and the record contained sufficient evidence for the ALJ to reach a decision. The ALJ's duty to fully develop the record was not triggered, and he reasonably relied on Dr. Nagel's opinion in reaching his decision.

At one point in her supporting brief, Seaich contends "[t]he ALJ erred and failed to give Drs. [Nelson], Reed, Davis, Eyler, Reid, Chin, and Trevelline's testimony sufficient weight without the necessary clear and convincing reasons to ignore their opinions." (Doc. 11, at 26). Except as to Dr. Nelson, this is the full extent of Seaich's argument. She does not explain what evidence or opinions she is referring to, what findings she believed the ALJ overlooked, or how he may have erred in evaluating any particular opinion provided by Dr. Reed, Dr. Davis, Dr. Eyler, Dr. Reid, Dr. Chin, or Dr. Trevelline. Seaich's argument is cursory at best, and this Court is not required to scour the record in search of every conceivable error. See e.g. *White v. Astrue*, 2010 WL 3893951 *5 (D. Idaho Sept.

29, 2010). Because Seaich has not adequately articulated her argument, the Court declines to consider this issue any further.

B. **Credibility**

Seaich maintains the ALJ did not provide sufficiently clear and convincing reasons for finding her only partially credible.

If the ALJ finds "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). Seaich met her initial burden because she provided evidence of underlying impairments that could reasonably be expected to produce some of the symptoms alleged, and the ALJ did not find that she was malingering. As set forth below, however, the ALJ then provided clear and convincing reasons for discounting Seaich's testimony.

The ALJ summarized Seaich's statements and testimony in his decision, noting that in October 2013 she reported being in constant pain and having a

limited range of motion. (Doc. 8-2, at 18-19; 8-6, at 32.). Seaich claimed she is unable to sit or stand for more than a few minutes at a time, and has problems taking care of her own personal hygiene due to her limited range of motion. (Doc. 8-6, at 32). Seaich wrote that she falls asleep frequently with no warning due to narcolepsy, and experiences urinary and bowel incontinence because of nerve damage. (Doc. 8-6, at 32). And in January 2014, Seaich reported that she volunteers for one hour, one day each week at her son's school, and is then confined to bed for two to three days afterward, regardless of whether she stands or sits during her volunteer time. (Doc. 8-6, at 55).

The ALJ found Seaich's statements as to the severity of her symptoms and the extent of her limitations less than entirely credible for three reasons. First, he found that Seaich's impairments improved with treatment and were controlled on medication. Impairments that can be controlled effectively with medication are not disabling. See *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ pointed to evidence that as of late June 2012, which marked the beginning of the relevant period for purposes of her current application, Seaich's physical examination findings were generally benign, her doctors described her as generally stable, and her bowel and bladder incontinence issues

had resolved. (Doc. 8-7, at 12-17, 129-33). The ALJ also noted that when Seaich began having problems with incontinence again in December 2013, she improved with treatment, which included medication, dietary changes, and physical therapy. (Doc. 8-2, at 23; 8-8, at 9-19, 25-45). The ALJ reasonably found the fact that Seaich's symptoms improved or were controlled and stable with treatment undercut her credibility as to the debilitating severity of her impairments.

Second, the ALJ found that Seaich's statements were not consistent with the objective medical evidence. (Doc. 8-2, at 20-27). The ALJ discussed the medical evidence at length in his decision, and cited several records showing unremarkable findings and test results, including a negative stress test. For example, the ALJ discussed a July 2013 report by examining neurosurgeon Dr. Chriss Mack, whose physical and neurological exam finding were generally normal or benign except for some decreased sensory findings. (Doc. 8-11, at 96). Dr. Mack stated that Seaich "does not appear to be anything other than healthy," and noted that during their conversation she was walking well in the examination room and hopping on the examination table. (Doc. 8-11, at 97). Dr. Mack recommended against surgical intervention. The ALJ reasonably found that the medical findings in Dr. Mack's report and elsewhere in the record were not consistent with Seaich's

complaints of disabling symptoms. (Doc. 8-2, at 23).

Third, the ALJ found that Seaich reported engaging in activities that were not entirely consistent with her allegations of disabling limitations. In particular, the ALJ pointed out that when Seaich saw Dr. Nelson in February 2014, she complained of having limited stamina in her legs "but also somewhat in her arms that she notices when shoveling snow." (Doc. 8-9, at 62). Although it is not clear how frequently or for how long Seaich actually engaged in that activity, the fact that she reported having done so at least once contradicts her testimony, particularly her testimony that she gets so tired after volunteering in her son's classroom for one hour that she has to spend three days in bed. See *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (an ALJ may discount a claimant's credibility based on evidence that the claimant has engaged in activities that contradict the claimant's testimony).

To the extent Seaich argues the ALJ erred by not considering "the impact of finances" on her "medication therapy," the Court is not convinced. The ALJ did not discount Seaich's testimony based on failure to seek treatment. The record reflects that Seaich sought and received treatment, including prescription medication, as needed for a variety of ailments.

The Court finds that the ALJ provided sufficiently clear and convincing reasons for finding Seaich less than entirely credible.

### C. Vocational Expert Testimony

Seaich argues the ALJ's hypothetical to the vocational expert was flawed because it did not incorporate all of her alleged limitations. As set forth above, however, the substantial evidence support the ALJ's assessment of Seaich's residual functional capacity, which was in turn reflected in the hypothetical question he posed to the vocational expert. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence).

## IV. Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 8th day of August, 2017

Jeremiah C. Lynch
United States Magistrate Judge